**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

JUDITH LARRIMORE, an individual,

        PLAINTIFF,

v.

PROSCI, INC., a Colorado corporation, and
PROFESSIONAL SCIENCE 360 HOLDINGS, INC., a Delaware corporation,

        DEFENDANTS.

---

**COMPLAINT**

---

Plaintiff, JUDITH LARRIMORE, by and through her undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits her Complaint against Defendants, PROSCI, INC. and PROFESSIONAL SCIENCE 360 HOLDINGS, INC., alleging as follows:

**INTRODUCTION**

1. This is an employment discrimination and retaliation suit brought by a former employee of Defendants, who was discriminated against, retaliated against, and wrongfully terminated in violation of federal and state law. Plaintiff informed her supervisors about her disability and requested reasonable accommodations, including but not limited to bringing an emotional support animal to work and working from home. After Plaintiff's protected

1

disclosures, she was subject to adverse treatment, harassed by her supervisor, and terminated after approximately thirteen (13) years of dedicated service.

2. Plaintiff asserts claims of disparate treatment, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"); and, the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq.* ("CADA"). Finally, Plaintiff asserts a state law claim against Defendants for wrongful termination in violation of public policy.

## PARTIES

3. Plaintiff, JUDITH LARRIMORE ("Plaintiff" or "Ms. Larrimore"), is a citizen of Baltimore County, who presently resides at 19 East Elm Avenue, Baltimore, MD 21206.

4. Defendant, PROSCI, INC., ("Defendant Prosci" or "Prosci"), is a Colorado corporation with its principal office at 2950 East Harmony Road, Suite 130, Fort Collins, CO 80528, United States.

5. Defendant, PROFESSIONAL SCIENCE 360 HOLDINGS, INC. (together with Defendant Prosci, "Defendants"), is a Delaware corporation with its principal office at 5042 Technology Parkway, Fort Collins, CO 80528, United States.

6. At all relevant times, Plaintiff was an "employee", as set forth in 42 U.S.C. § 12111(4) of the ADA, and Colo. Rev. Stat. § 24-34-401(2) of the CADA.

7. At all relevant times, Defendants were covered by the definitions of "employer" set forth in of the 42 U.S.C. § 12111(5) of the ADA and Colo. Rev. Stat. § 24-34-401(3) of the CADA.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 1343. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5(f)(1) and (3); and, Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981(a).

9. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. In addition, this Court has jurisdiction over the Defendants as the complained of unlawful employment practices took place in Colorado and the Defendants maintain substantial, ongoing business operation(s) in this state.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

## FACTUAL ALLEGATIONS

12. In 1999, Ms. Larrimore was diagnosed with anxiety and depression.

13. Prosci hired Ms. Larrimore in the position of Training Logistics Coordinator on August 2, 2007.

14. On or about July 2016, Prosci hired Ms. Sue Chaiken as Director of Program Logistics & Client Support.

15. Until Ms. Chaiken's hiring, Ms. Larrimore had relatively few, if any, issues with her employment at Prosci.

16. On Ms. Chaiken's first day at Prosci, a meeting was scheduled by Ms. Michelle Haggerty, Chief Operating Officer, between herself, Ms. Larrimore, and Ms. Chaiken.

17. At this meeting, Ms. Haggerty and newly-hired Ms. Chaiken surprised Ms. Larrimore with news that a project Ms. Larrimore had been working on and preparing for over six (6) months was no longer needed.

18. The manner in which Ms. Haggerty and Ms. Chaiken informed Ms. Larrimore of her project's conclusion caused Ms. Larrimore to react emotionally out of distress.

19. By July 2018, Ms. Larrimore felt her anxiety and depression increasing and requested from Prosci that she be allowed to bring her Emotional Support Animal ("ESA"), Emma, to work.

20. As part of this request for reasonable accommodations, Ms. Larrimore offered Prosci a letter from her therapist explaining how bringing her ESA to work would help with her anxiety and depression.

21. Prosci denied Ms. Larrimore's July 2018 request for reasonable accommodations.

22. Prosci claimed that the reason for denying Ms. Larrimore's request for reasonable accommodations was that the building manager where Prosci was located had a restriction against animals in the building.

23. On October 12, 2018, Ms. Larrimore went home during her lunch break to spend time with her ESA because she was feeling anxious and depressed from the environment at work.

24. Ms. Larrimore felt more productive and able to focus on work with her ESA present.

25. Ms. Larrimore decided to return to work with her ESA due to the therapeutic benefits her ESA provided.

26. After returning from lunch, Ms. Larrimore's ESA was sleeping quietly next to her when Ms. Chaiken entered the office Ms. Larrimore was using, closed the door, and asked why she had brought her ESA to work. Ms. Larrimore responded that it was "basically to feel some love."

27. Ms. Chaiken then proceeded to interrogate Ms. Larrimore with inappropriate questions about her feelings and the interpersonal relationships Ms. Larrimore had with her colleagues.

28. Throughout this interrogation, Ms. Larrimore explained how certain interactions with her colleagues made her feel unwelcome and affected her mental health; however, Ms. Chaiken refuted her claims and instead supported those colleagues whom Ms. Larrimore had complained about.

29. At one point, Ms. Chaiken decided to bring into the meeting Ms. Anne Larson, Director of Human Resources ("HR").

30. Once Ms. Larson arrived, Ms. Larrimore further reported to Ms. Larson and Ms. Chaiken the interpersonal difficulties she was having, specifically the "freezing-out" and harassment.

31. Ms. Larson replied, "if you are no longer happy, maybe it's time for you to go."

32. Eventually the meeting turned to a discussion of Ms. Larrimore's work performance and Ms. Chaiken stated that she wanted Ms. Larrimore to work faster.

33. When Ms. Larrimore reiterated the issues she was having at work, Ms. Chaiken told her they were "bullshit!"

34. The meeting between only Ms. Larrimore and Ms. Chaiken lasted roughly sixty (60) minutes and continued for an additional ninety (90) minutes once Ms. Larson arrived.

35. During the two-and-a-half hour meeting on October 12, 2018, Ms. Larrimore was not permitted to leave at any point, including to use the restroom or simply to compose herself.

36. On October 16, 2018, four (4) days after the meeting with Ms. Chaiken and Ms. Larson, Ms. Larrimore met with Ms. Haggerty.

37. During the meeting on October 16, Ms. Larrimore told Ms. Haggerty what had happened during the meeting she had four (4) days prior, specifically what Ms. Larson had said about it being "time for [Ms. Larrimore] to go," however Ms. Haggerty replied in defense of Ms. Larson's statement, "[Ms. Larson] was trying to give you a way out."

38. Ms. Haggerty then rhetorically asked, "you know how some people don't know when it's time for them to leave, but they've been somewhere too long?"

39. Ms. Haggerty further commented that Ms. Larrimore was "very well paid," and implied that Ms. Larrimore should be able to handle some negativity.

40. On November 10, 2018, Ms. Larrimore requested reasonable accommodations for a second time, specifically asking to work from home one (1) day per week to help ease her anxiety and to spend time with her ESA

41. Ms. Chaiken denied this reasonable accommodation request, despite the fact that Prosci was allowing Ms. Larrimore's colleagues to work from home for two (2) days per week.

42. Ms. Chaiken discriminated against Ms. Larrimore for her protected disability when she denied Ms. Larrimore's request for reasonable accommodations to work from home one (1)

6

day per week while permitting non-disabled employees to work from home two (2) days per week.

43. Two (2) days after being denied by Ms. Chaiken, Ms. Larrimore went up the Prosci chain-of-command to Ms. Haggerty and again made her request for reasonable accommodations to work from home one (1) day per week, reminding Ms. Haggerty that her request was simply for accommodations due to her disability.

44. On November 12, 2018, Ms. Haggerty approved Ms. Larrimore's reasonable request to work from home one (1) day per week.

45. In April 2019, the pattern of hostility at Prosci continued against Ms. Larrimore in the then-new, and what is now current, offices.

46. On April 12, 2019, Ms. Larrimore again requested a reasonable accommodation for her ESA to be brought into work on occasion; however, the request was denied for the same reason as before: that the building manager had restrictions against animals in the building.

47. On July 25, 2019, Ms. Larrimore met with Ms. Chaiken and reported feeling disregarded and "frozen-out" by the rest of her coworkers. Ms. Chaiken replied that Ms. Larrimore's point of view was "not true."

48. On or about the end of August 2019, one of Ms. Larrimore's coworkers requested reasonable accommodations in the form of bringing her dog into work. Upon information and belief, this coworker did not have a letter from a therapist stating that the dog was an ESA, but Prosci granted the coworker's request because that coworker stated she was going to train the dog to be a therapy dog.

49. Once again, Ms. Larrimore had recently made a reasonable request for accommodations based on her disability and was denied, however another coworker at Prosci who may or may not have been disabled had their accommodation request granted.

50. At no point during Ms. Larrimore's employment with Prosci did Prosci begin the interactive process required under the ADA with regard to accommodation requests.

51. On October 10, 2019, Ms. Larrimore went for a walk with Scott McAllister, President and CEO of Prosci. She reported the harassment and bullying she suffered from her coworkers and supervisors, however Mr. McAllister refuted Ms. Larrimore's assessment and told her that he had not seen any of the harassment or bullying happening. Ms. Larrimore then compared her experience to that of domestic violence where people outside of the house and home are not witness to the insidious activities going on inside.

52. As a result of Prosci's inability to recognize the harassment and bullying going on within its own walls, by November of 2019, Ms. Larrimore was worried about her career and feared that further "tattling" or reporting, after being told it "might be time for her to go," would result in retaliation or termination.

53. On January 9, 2020, Mr. McAllister walked over to Ms. Larrimore's desk to find her crying, and the two (2) of them met the next week over lunch to discuss what was going on at Prosci.

54. At this lunch meeting, Ms. Larrimore explained how she felt isolated and how her team either shunned or harassed her. Mr. McAllister replied that the coworkers Ms. Larrimore was referring to were "too nice" and could not have harassed or bullied her.

55. Despite his refutations, Mr. McAllister was at this point in time on notice that Ms. Larrimore felt harassed and bullied by her colleagues at Prosci.

56. On February 13, 2020, Ms. Chaiken and Ms. Larrimore had a meeting where Ms. Chaiken wanted to talk about Ms. Larrimore's projects.

57. Ms. Larrimore explained that she was frustrated by the roadblocks that she felt had been set up to prevent her success, prompting Ms. Chaiken to ask Ms. Larrimore for the true reason behind her being upset.

58. Ms. Larrimore talked about her projects while Ms. Chaiken continued questioning her. Ms. Larrimore was uncomfortable and felt like Ms. Chaiken was trying to get her stirred up to say something "crazy" or self-incriminating.

59. Ms. Chaiken then said that Ms. Larrimore "make[s] people uncomfortable and that [she] make[s] a lot of mistakes."

60. The February 13, 2020 meeting lasted for over an hour and a half without any breaks.

61. On April 9, 2020, Ms. Larrimore was terminated from her position with Prosci after approximately thirteen (13) years with the company.

62. On July 29, 2020, Ms. Larrimore filed a Charge of Discrimination with the Colorado Civil Rights Division and the U.S. Equal Employment Opportunity Commission ("EEOC").

63. On September 11, 2020, Ms. Larrimore received the Notice of Right to Sue from the EEOC.

**FIRST CLAIM FOR RELIEF**
(*Violations of ADA – Disparate Treatment, Failure to Accommodate, and Retaliation*)

64. Plaintiff incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

65. A disparate treatment claim arises when an employer takes adverse action against an employee because of her disability.

66. A failure to accommodate claim arises under the ADA when an employer fails to meet its legal obligation to reasonably accommodate an employee with a known disability.

67. A retaliation claim arises when an employer takes adverse action against an employee because of her protected opposition to harassment, discrimination and/or retaliation.

68. The ADA Amendments Act of 2008 ("ADAAA") applies to Ms. Larrimore's ADA claims of failure to accommodate and disparate treatment, and retaliation because those actions took place during and after 2016. *See*, Pub. L. 110–325, § 8, 122 Stat. 3553 (Sep. 25, 2008), *codified at, e.g.*, 42 U.S.C. § 12101. Because of the date of the actions complained of, the greatly expanded definition of the ADA Amendments Act of 2008 applies to this case. Under the new law, "major life activity" and substantial limitation" are to be construed as broadly as possible.

69. Under the ADAAA, Plaintiff's disabilities must be assessed in their active state, without regard to mitigating measures like medical treatments or assistive aides. *See*, 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii); *see also*, 42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi).

70. With regard to impairments that do not fall into a "predictable assessment," "the condition, manner or duration" framework will often be relevant." The comparison will be to "most people" in the general population. *See* 29 C.F.R. §1630.2(j)(4)(i)-(ii). When measured using the condition, manner or duration framework, Ms. Larrimore has a qualifying disability.

71. Defendants knew of Ms. Larrimore's qualifying disabilities of anxiety and depression.

72. Ms. Larrimore's medical condition(s) substantially limit one or more of her major life activities, including, but not limited to, working, concentrating, eating, sleeping, and caring for herself.

73. Plaintiff was able to perform the essential functions of her position.

74. At all relevant times, Plaintiff was a qualified individual with a known or perceived disability as defined by the ADA.

75. Defendants were aware of Plaintiff's qualifying disabilities.

76. Defendants subjected Plaintiff to less favorable terms and conditions of her employment and took adverse actions against her due to her disabilities as described in this complaint, including: failing to provide reasonable accommodations, treating her with hostility, giving her negative feedback, and abruptly terminating her employment.

77. Plaintiff requested reasonable accommodations for her disabilities.

78. Defendants failed to engage in the interactive process.

79. Defendants denied Plaintiff's requests for reasonable accommodations by denying her requests to bring her Emotional Support Animal to work, and for initially denying her request to work from home one (1) day per week.

80. Plaintiff engaged in protected activity within the meaning of the ADA when she requested the accommodation of bringing her Emotional Support Animal to work, and when she requested the accommodation of working from home one (1) day per week.

81. Prosci wrongfully terminated Plaintiff because of her disability and in retaliation for seeking accommodations.

82. Alternatively, during all relevant time periods, Defendant regarded Ms. Larrimore as disabled.

83. Defendants' actions were engaged in intentionally and willfully, with malice or in reckless disregard for Plaintiff's federally protected rights.

84. As a result of Defendants' unlawful employment practices, Ms. Larrimore has suffered economic and non-economic damages including, but not limited to, severe emotional distress, mental pain and suffering, inconvenience, and loss of income, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
*(Violations of the CADA – Disparate Treatment, Failure to Accommodate, and Retaliation)*

85. Plaintiff incorporates by reference paragraphs 1 through 84 as if fully set forth herein.

86. Plaintiff belongs to a protected class based on her disabilities.

87. Defendants, its employees, and agents unlawfully discriminated against Plaintiff based on her disability, including failing to provide reasonable accommodations, treating her with hostility, giving her negative feedback, and abruptly terminating her employment.

88. Plaintiff demonstrated a pattern of opposition to the unlawful harassment, retaliation, and discrimination that she experienced based upon her disabilities while employed by Defendants.

89. As a result of Plaintiff's protected opposition to discrimination, Defendants retaliated against her by subjecting her to less favorable terms and conditions of employment including, but not limited to: adverse treatment, denial of accommodations and termination.

90. Defendants' actions were unlawful, intentional, willful, and done in reckless disregard for Plaintiff's legal rights as protected by CADA.

91. Defendants' conduct as described herein constituted discriminatory or unfair employment practices in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

92. As a direct, proximate and foreseeable result of Defendants' intentional action in this regard, Plaintiff suffered damages to be proven at trial, including lost wages and benefits.

### THIRD CLAIM FOR RELIEF
*(Wrongful Termination in Violation of Public Policy)*

93. Plaintiff incorporates by reference paragraphs 1 through 92 as if fully set forth herein.

94. The CADA constitutes the public policy of the State of Colorado by prohibiting, among other things, discrimination against employees on the basis of their disabilities and retaliation against employees who exercise their rights by opposing unlawful employment practices.

95. The policies set forth in the CADA are the policies that truly impact the public.

96. Plaintiff was terminated by Defendants in retaliation for exercising a job-related right or privilege, and the termination undermines a clearly expressed public policy.

97. Defendants' conduct was malicious, willful and/or wanton, and exhibited reckless or callous indifference to Plaintiff's protected rights.

98. As a direct and proximate result of such discrimination and retaliation, Plaintiff has suffered and continues to suffer damages to be proven at trial, including, but not limited to, loss of wages and benefits, a loss of job, loss of career opportunities and interruption of career path, emotional distress, and other consequential damages.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and against Defendants, and order the following relief:

a. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

b. Reinstatement or front pay and benefits in lieu thereof;

c. Back pay, benefits, and other economic losses;

d. Injunctive and/or declaratory relief;

e. Liquidated damages on all claims allowed by law;

f. Punitive damages as allowed by law;

g. Relevant statutory damages;

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorney fees and costs of this action, including expert witness fees, as available by law; and,

j. Any such further relief allowable by law or as justice requires.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on December 9, 2020

        BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at Law, P.C.*

s/ *Ian C. Schenholm*
BRYAN E. KUHN, COUNSELOR AT LAW, P.C.
Ian C. Schenholm, CLPG #2020CLPG0001
Bryan E. Kuhn, Esq. #33642
1660 Lincoln Street, Suite 2330
Denver, Colorado 80264
(p) (303)424-4286 (f) (303) 425-4013
Ian.Schenholm@beklegal.com
Bryan.Kuhn@beklegal.com
ATTORNEYS FOR PLAINTIFF